UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-81018-Civ-Brannon

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

    Plaintiff,
vs.

SOUTHERN-OWNERS INSURANCE COMPANY,

    Defendant,
_____/

SOUTHERN-OWNERS INSURANCE COMPANY,

    Counterclaim Plaintiff,
vs.

LIBERTY MUTUAL FIRE INSURANCE COMPANY,
and P&A ROOFING AND SHEET METAL, INC.,

    Counterclaim/Third-Party Defendants,
_____/

P&A ROOFING AND SHEET METAL, INC.,

    Counterclaim/Fourth-Party Plaintiff,
vs.

SOUTHERN-OWNERS INSURANCE COMPANY,

    Counterclaim/Fourth-Party Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Southern-Owners Insurance Company's Motion for Summary Judgment [DE 95] and P&A Roofing and Sheet Metal, Inc.'s Motion for Summary Judgment [DE 105]. The motions, and their accompanying factual statements, are fully-briefed and the Court heard oral argument on November 21, 2019.

1

Both motions center on the interpretation of two insurance policies—and in particular, one policy's exclusion for "Projects and Operations Covered by a Consolidated (Wrap-Up) Insurance Program" ("OCIP Exclusion")—in connection with an insured construction project. For the following reasons, the Court concludes that summary judgment is due to be granted in favor of Southern-Owners Insurance Company ("Southern-Owners") and against both Liberty Mutual Fire Insurance Company ("Liberty Mutual") and P&A Roofing and Sheet Metal, Inc. ("P&A Roofing").

## I.   FACTUAL BACKGROUND

This insurance coverage dispute involves the interpretation of two insurance policies covering a construction job site following a state court lawsuit alleging construction defects at that site. Below are the undisputed facts drawn from uncontested record evidence and the parties' factual statements [DE 96, DE 101, DE 106, DE 113].

### A. *The CityPlace South Construction Project*

Cityplace South Condominium was a construction project developed by Cityplace South Tower, LLC between 2005 and 2008, and the general contractor for this project was Moss & Associates, LLC [DE 1 ¶¶ 7-9; DE 96 ¶ 4; DE 101 ¶ 4; DE 106 ¶ 4]. Moss & Associates, LLC contracted with P&A Roofing and Sheet Metal, Inc. ("P&A Roofing") to provide roofing services, and P&A Roofing subcontracted with S&S Roofing Systems, Inc. ("S&S Roofing") to provide roofing materials and install the roof on the project [DE 1 ¶¶ 10-11; DE 96 ¶ 4; DE 101 ¶ 4; DE 106 ¶ 4].

The subcontract between P&A Roofing and S&S Roofing, dated November 13, 2007, required S&S Roofing to obtain commercial general liability ("CGL") insurance and to include P&A Roofing as an "Additional Insured" under its CGL insurance policy [DE 1-1 § 3(a)-(c)]. The

subcontract also contained an indemnity provision requiring S&S Roofing to defend P&A Roofing against a broad variety of claims and required S&S Roofing to do so "at its own expense." [*Id.* § 11].

### B. *The Southern-Owners' Insurance Policy*

Southern-Owners issued a CGL insurance policy to S&S Roofing, which was in effect while the CityPlace construction project was underway [DE 96 ¶ 1; DE 101 ¶ 1; DE 106 ¶ 1]. The Southern-Owners' policy included the following "Blanket Additional Insured" provision:

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BLANKET ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM.

**A.** Under **SECTION II - WHO IS AN INSURED,** the following is added:

A person or organization is an Additional Insured, only with respect to liability arising out of "your work" for that Additional Insured by or for you:

**1.** If required in a written contract or agreement; or

**2.** If required by an oral contract or agreement only if a Certificate of Insurance was issued prior to the loss indicating that the person or organization was an Additional Insured.

**B.** Under **SECTION III - LIMITS OF INSURANCE,** the following is added:

The limits of liability for the Additional Insured are those specified in the written contract or agreement between the insured and the owner, lessee or contractor or those specified in the Certificate of Insurance, if an oral contract or agreement, not to exceed the limits provided in this policy. These limits are inclusive of and not in addition to the limits of insurance shown in the Declarations.

**C. SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS,** is amended as follows:

**1.** The following provision is added to **4. Other Insurance:**

This insurance is primary for the Additional Insured, but only with respect to liability arising out of "your work" for that Additional Insured by or for you. Other insurance available to the Additional Insured will apply as excess insurance and

not contribute as primary insurance to the insurance provided by this endorsement.

**2.** The following provision is added:

**Other Additional Insured Coverage Issued By Us**

If this policy provides coverage for the same loss to any Additional Insured specifically shown as an Additional Insured in another endorsement to this policy, our maximum limit of insurance under this endorsement and any other endorsement shall not exceed the limit of insurance in the written contract or agreement between the insured and the owner, lessee or contractor, or the limits provided in this policy, whichever is less. Our maximum limit of insurance arising out of an "occurrence", shall not exceed the limit of insurance shown in the Declarations, regardless of the number of insureds or Additional Insureds.

All other policy terms and conditions apply.

[DE 96-4 at 1].

The Southern-Owners' policy also included the following "OCIP Exclusion":

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - PROJECTS AND OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

The following exclusion is added to paragraph **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions:**

This insurance does not apply to:

**Projects And Operations Covered By a Consolidated (Wrap-up) Insurance Program**

"Bodily injury" or "property damage" arising out of your ongoing operations or completed operations including those within the "products-completed operations hazard" for which a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

(1) Provides coverage identical to that provided by this Coverage Part;

(2) Has limits adequate to cover all claims; or

4

(3) Remains in effect.

This exclusion shall not apply at the location described in the Schedule of this endorsement.

All other policy terms and conditions apply

### SCHEDULE

**Description and Location of Projects and Operation(s):**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

[DE 96-1 at 13 (Southern-Owners Policy)].

### C. *The Liberty Mutual Insurance Policy*

Liberty Mutual issued a CGL insurance policy to Moss & Associates, which was also in effect while the CityPlace construction project was underway [DE 1-2 (Liberty Mutual Policy); DE 96 ¶ 10; DE 101 ¶ 10; DE 106 ¶ 10]. P&A Roofing enrolled in the Liberty Mutual insurance program; S&S Roofing did not enroll [DE 96 ¶ 12; DE 101 ¶¶ 12, 14; DE 106 ¶¶ 12, 14; DE 113 ¶ 14]. The Liberty Mutual policy included an endorsement entitled "Wrap-Up Insurance Program—Amendment of Coverage" which modified the policy's terms of coverage [DE 1-2 at 23-25]. In relevant part, the endorsement provided that:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**WRAP-UP INSURANCE PROGRAM—AMENDMENT OF COVERAGE**

This endorsement modifies coverage provided under:

Commercial General Liability Coverage Part

A.   Section II – Who Is An Insured is amended to include as a Named Insured all contractors for whom any named insured has agreed by written contract prior to the loss to provide general liability coverage under a wrap-up insurance program for the "designated project" and for whom the "Wrap-Up Administrator" has created an enrollment record, but does not include vendors, suppliers, off-site fabricators, material dealers and others who merely make deliveries to or from the "project site(s).

5

>   B.  This insurance shall only apply to "personal injury" and "property damage" that result directly from operations that are:
>
>   1. Within the scope of the "designated project"; and
>
>   2. Performed by a contractor directly or indirectly on behalf of the first named insured at a "project site".
>   …
>
>   H.  Other Insurance …
>
>   >   a.  Primary Insurance
>   >
>   >   This insurance is primary except when b. below applies

[DE 1-2 at 23-24].

### D. *The Underlying State Court Action*

On August 24, 2016, CityPlace South Tower Condominium Association, Inc. sued Moss & Associates, P&A Roofing, S&S Roofing, and others in state court. *See CityPlace S. Tower Condo. Ass'n, Inc. v. CityPlace S. Tower, LLC et al.*, No. 2016-CA-009609-MB (Fla. 15th Cir. Ct.). [DE 96 ¶ 7; DE 101 ¶ 7; DE 106 ¶ 7;]. The state court action is presently proceeding under a Fifth Amended Complaint that alleges "defective workmanship" for the condominium's roof and roofing system. The state court action alleges several claims against P&A Roofing and S&S Roofing, including negligence and breaches of warranties [DE 102-2 ¶¶ 83-84]. The state court action alleges the following damages:

>   damages to the roof and roof system … the costs to repairing the roof and roof system … actual damages for the value of the materials purchased and used in the construction of the building; increased insurance premiums and other related expenses, and other consequential damages… Costs already incurred to inspect, design, repair and/or remediate property damaged by the roofing system … Costs that will be incurred to inspect, design, repair and/or replace damage to other property which will continue to occur as part of the continuing failure of the roofing system to comply with their statutory fitness warranty … monetary damages to repair and replace the damaged roofing system and damage to other property; repair and replacement of real property, materials or fixtures[] repaired … costs incurred to inspect, design, construct, repair and replace the defective 2011 roofing system improvement and enhancement.

[DE 102 ¶ 8 (Robert DeVarona Dec.); DE 102-2 ¶¶ 62, 85, 105, 178-79, 253, 259].

Liberty Mutual is providing a defense to P&A Roofing under a reservation of rights [DE 102 ¶ 12]. In January 2017,[1] Southern-Owners issued a letter also agreeing to provide P&A Roofing with a defense under a reservation of rights in the state court action [DE 102-3; DE 12 ¶ 4(i) (Joint Discovery Plan)]. The January 2017 letter from Southern-Owners notes that "defense and indemnity is limited to liability arising out of work performed by S&S Roofing Systems, Inc," and "[t]here will be no coverage for any costs for inspection or replacement of the roof itself as that is considered 'work product'" [DE 102-3].

On May 1, 2017, Southern-Owners issued another letter with an "updated coverage position." [DE 102-5]. In this later letter, Southern-Owners acknowledged its provision of a defense for P&A Roofing under a reservation of rights but cited several listed reasons why "[t]here may not be coverage for some or all of the claims and/or damages under the policy." [*Id.*]. One reason cited was the OCIP Exclusion in the Southern-Owners insurance policy with the following explanation:

> ***There may not be coverage if there was any Consolidated Insurance Program in place*** … [citation to the Southern-Owners' OCIP Exclusion policy language]. If the prime contractor/project manager or owner provided any consolidated insurance program for this project, then the Policy does not provide coverage for any damages arising out of this project.

[DE 102-5 at 5-6 (emphasis in original); DE 101 ¶ 17; DE 106 ¶ 16; DE 113 ¶ 16].

### E. This Federal Lawsuit; Summary Judgment Arguments

On August 1, 2018, Liberty Mutual commenced this action alleging one count of equitable contribution and one count of equitable subrogation against Southern-Owners. Liberty Mutual seeks

---

[1] The letter itself is dated January 16, 2016. The Court accepts the January 2017 date set forth in the parties' respective factual statements and the joint discovery plan because this date coincides with the overall timeline of events, including the state court lawsuit's commencement date of August 2016.

reimbursement from Southern-Owners for attorney's fees and costs that Liberty Mutual has paid, and continues to pay, defending P&A Roofing in the state court action. Southern-Owners previously sought for this Court to dismiss this action for lack of subject matter jurisdiction (or alternatively, to require Liberty Mutual to provide a more definite statement) and to strike Liberty Mutual's claim for attorney's fees. On February 8, 2019, the Court denied these requests [DE 32]. Southern-Owners thereafter filed its Answer, a Counterclaim against Liberty Mutual,[2] and a Third-Party Complaint against P&A Roofing. Southern-Owners asserts that there is no coverage for P&A Roofing under the Southern-Owners policy based upon several provisions, including but not limited to the OCIP Exclusion. P&A Roofing responded with an Answer, a Counterclaim against Southern-Owners, and a Fourth-Party Complaint against S&S Roofing. Southern-Owners responded to P&A Roofing's counterclaim by asserting that there is no coverage under the Southern-Owners policy's provisions.

On September 9, 2019, the Court severed P&A Roofing's claims against S&S Roofing and remanded these claims back to state court on jurisdictional grounds. S&S Roofing was thus terminated as a party to these proceedings. That same day, the Court granted an unopposed motion for a limited stay of all issues aside from the parties' potentially dispositive dispute over the applicability of the OCIP Exclusion in the Southern-Owners policy. The instant summary judgment briefing ensued.

The parties seek a summary judgment ruling on the issue of whether and how, if at all, the OCIP Exclusion in the Southern-Owners' insurance policy applies to the insurance coverage claims in this case. Southern-Owners argues that:

> Since there is no coverage for P&A Roofing under the Southern-Owners policy, Southern-Owners has no duty to defend and/or indemnify P&A Roofing for the claims

---

[2] Cityplace South Tower Condominium Association, Inc. was also named as a counterclaim defendant but was later voluntarily dismissed from this suit without prejudice [DE 51].

8

in the underlying action. Since Southern-Owners has no duty to defend P&A Roofing, Liberty Mutual is not entitled to equitable subrogation/contribution from Southern-Owners for reimbursement of defense fees and costs spent in defending P&A Roofing in the Underlying Action. Likewise, P&A Roofing is not entitled to reimbursement of any past and/or future defense fees and costs incurred in its defense of the Underlying Action.

[DE 95 at 21]. Liberty Mutual counters that:

Southern-Owners … has the sole duty to defend P&A. ... First, Southern-Owners' exclusion does not apply because the Liberty Mutual CCIP [Contractor Controlled Insurance Program] was not provided "for" S&S Roofing's operations. Second, Southern-Owners' proposed interpretation is unreasonable and strains the policy language, which fails to define key terms, including "wrap up" policy. Moreover, even if this Court accepts Southern-Owners' interpretation, the record evidence still shows that a potential for coverage exists under the policy. Third, if the Court considers both parties' interpretations as reasonable, the Court should consider the exclusion ambiguous and, according to Florida law, must construe the exclusion in favor of finding coverage for P&A under the Southern-Owners' policy.

[DE 100 at 2-3]. P&A Roofing adopts Liberty Mutual's position and seeks summary judgment in its favor. P&A Roofing further offers the following additional arguments:

1. The phrase "in which you are involved" clearly modifies the term "consolidated (wrap-up) insurance program," and accordingly conditions the application of the OCIP exclusion on S&S's involvement (enrollment) in the OCIP.
   …
2. No "consolidated (wrap-up) insurance program" has "been provided" to S&S within the meaning of the OCIP exclusion where S&S was not enrolled in the OCIP.

[DE 105 at 2, 5].

## II. **LEGAL STANDARDS**

### *A. Summary Judgment Standard*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue of fact is "genuine" if the evidence could lead a rational jury to find for the non-moving party. *Baby Buddies, Inc. v. Toys "R" Us, Inc.*,

9

611 F.3d 1308, 1314 (11th Cir. 2010).  It is "material" if it might affect the outcome of the case under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A reviewing court must decide if "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Anderson*, 477 U.S. at 251).

The moving party bears the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010); *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). To defeat a motion for summary judgment, a non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists."  *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1315 (11th Cir. 2007).

Cross-motions for summary judgment do not change the standard and a court must consider each such motion separately.  *American Bankers Ins. Group v. U.S.*, 408 F.3d 1328, 1331 (11th Cir. 2005); *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 541 F. Supp. 2d 1295, 1297–98 (M.D. Fla. 2008).  Each moving party carries the initial burden of proof and meets this burden by identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322–24. Once the initial burden is satisfied, the burden shifts to the opposing party to demonstrate through the production of probative evidence that there remains a genuine issue of fact to be tried.  *Id.*

### B. *Insurance Contract Interpretation in Florida*

The parties agree that Florida law applies in this case involving insurance coverage under policies that were delivered and executed in Florida. *See Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.*, 657 F.3d 1135, 1141 (11th Cir. 2011) (per curiam); *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006).

In Florida, ordinary contract principles apply to the interpretation and construction of insurance contracts, and as with all contracts, the interpretation is a question of law. *See Fabricant v. Kemper Independence Ins. Co.*, 474 F.Supp.2d 1328, 1331 (S.D. Fla. 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So.2d 840, 842 (Fla. 4th DCA 2002). An insurance policy is to be interpreted according to its plain language. *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 735 (Fla. 2002). Ambiguous terms are construed in favor of coverage, but "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005).

Ambiguities occur when a policy's language "is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage." *Travelers Indem. Co. v. PCR Inc.*, 889 So.2d 779, 785 (Fla. 2004). In those cases, courts should resolve the ambiguity in favor of the insured by adopting the reasonable interpretation of the policy's language that provides coverage, rather than the competing interpretation that does not. *Id.* at 785–86. Similarly, clauses providing coverage should be interpreted in the broadest possible manner to effect the greatest amount of coverage, *Fabricant*, 474 F.Supp.2d at 1331 (citing *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So.2d 176, 179 (Fla. 4th DCA 1997), while exclusionary clauses should be strictly construed. *Westmoreland*, 704 So.2d at 179.

As courts seek to arrive at a reasonable interpretation, "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties—not a strained, forced, or unrealistic construction." *Siegle*, 819 So.2d at 736. "In construing insurance contracts, 'courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.'" *Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013). Further, as a matter of state substantive law, this endeavor to interpret must adhere to the relevant guidance of the state appellate courts. *State Farm Fire and Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004).

### III.   ANALYSIS

Florida law applies different standards to an insurance company's duty to defend a lawsuit and its duty to indemnify losses. *See State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, n.3 (Fla. 1998) ("The duty to indemnify is determined by the underlying facts of the case ... whereas the duty to defend is controlled by the allegations in the [underlying] complaint"). Here, however, those differences are not meaningful, because the parties generally agree on the underlying facts—that is, a general contractor hired P&A Roofing as the roofing subcontractor to install a roof as part of the CityPlace construction project. P&A Roofing sub-subcontracted the roofing work to S&S Roofing. After the roof was installed by S&S Roofing, P&A Roofing and S&S Roofing were both sued in state court for alleged roofing defects.

This case centers on the parties' disagreement over whether Southern-Owners should be paying for P&A Roofing's defense in the state court lawsuit. The legal question presented is whether P&A Roofing qualifies for coverage as an additional insured under the Southern-Owners' policy issued to named insured S&S Roofing. More narrowly, this case hinges on whether P&A Roofing's activities and involvement in the CityPlace construction project qualify as "Projects and Operations

Covered by a Consolidated (Wrap-Up) Insurance Program" therefore triggering the OCIP exclusion in the Southern-Owners' policy. As explained below, the Court finds that the OCIP exclusion applies to bar coverage for the claims against P&A Roofing in the state court action.

An instructive starting point is the case of *TNT Equip. Inc. v. Amerisure Mut. Ins. Co.,* 2016 WL 5146198 (M.D. Fla. Sept. 21, 2016), which Southern-Owners relies upon to support its argument that the OCIP exclusion in its policy precludes coverage for P&A Roofing. *TNT* involved a dispute following an accident at a hotel construction site. While performing stucco work, a worker's equipment collapsed and caused him to fall forty to fifty feet. The defective equipment was under lease from TNT to a primary subcontractor (Stowell) responsible for various components of the hotel construction project, including stucco work. When the worker sued TNT and Stowell for negligence, TNT filed a declaratory action as to the parties' rights and obligations under two insurance policies. One of TNT's arguments was that it was owed additional insured coverage under an Amerisure policy issued to Stowell. The Amerisure policy at issue had an exclusionary provision—titled Operations Included Within a Controlled Insurance Program Exclusion—which provided:

> This insurance does not apply to 'bodily injury' or 'property damage' arising out of either your ongoing operations or operations included within the 'products completed operations hazard' if such operations were at any time included within a 'controlled insurance program' for a construction project in which you are or were involved.

*Id.* at *2.

Amerisure argued that its above OCIP exclusion applied to bar coverage for TNT because "(1) the claims against TNT are based on bodily injury ultimately arising from Stowell's operations; and (2) Stowell's operations were covered by a 'controlled insurance program'—namely, a General Liability 'Wrap-Up' policy issued by Liberty [Surplus Insurance Corp.] to Project owner Sierra Land Group ('Sierra OCIP')." *Id.* at 2-3. TNT did not dispute Stowell's coverage under the Sierra OCIP or that the underlying claims against TNT arose from Stowell's use of the leased equipment. However,

13

TNT argued that the OCIP exclusion applied only to Stowell, as the named insured, and not to TNT, as the additional insured, because, in TNT's view, the terms "you" and "your" in the exclusionary provision referred only to Stowell.

The *TNT* court disagreed with TNT, finding that the Amerisure OCIP exclusion "expressly extends beyond the Named Insured [Stowell]…Specifically, the exclusion pertains to Stowell's 'ongoing operations or operations included within the 'products-completed operations hazard' that were at any time 'included within a 'controlled insurance program.'" *Id.* at 6. The *TNT* court further found that the Amerisure OCIP exclusion's statement that it "applie[d] regardless of whether such operations are or were conducted by [Stowell] or on [Stowell's] behalf … provides a very clear intention to extend the OCIP Exclusion beyond Stowell to other parties otherwise covered by the Amerisure CGL—irrespective of whether a controlled insurance program supplied adequate coverage or coverage identical to that of the Amerisure CGL." *Id.*

Here, as shown in the below side-by-side comparison, the Southern-Owners' OCIP Exclusion contains language that is substantially similar to the Amerisure OCIP exclusion that was at issue in *TNT*:

| **Amerisure OCIP Exclusion** | **Southern-Owners OCIP Exclusion** |
|---|---|
| **The following exclusion is added to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, paragraph 2. Exclusions:** <br><br> This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products completed operations hazard" if such operations were at any time included within a "controlled insurance program" for a construction project in which you are or were involved. | **EXCLUSION - PROJECTS AND OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM** <br><br> This endorsement modifies insurance provided under the following: <br><br> COMMERCIAL GENERAL LIABILITY COVERAGE PART. <br><br> The following exclusion is added to paragraph SECTION I - COVERAGES, COVERAGE A. |

| | |
|---|---|
| This exclusion applies whether or not the "controlled insurance program" provides:<br>(1) Coverage identical to that provided by this Coverage Form;<br>(2) Limits adequate to cover all claims; or<br>(3) Coverage that remains in effect.<br>...<br>C. The following is added to Section V – Definitions<br>"Controlled insurance program" means a construction, erection or demolition project for which the prime contractor/project manager or owner of the construction project has secured general liability insurance covering some or all of the contractors or subcontractors involved in the project, otherwise referred to as an Owner Controlled Insurance Program (O.C.I.P.) or Contractor Controlled Insurance Program (C.C.I.P.).<br><br>*TNT Equip. Inc.,* 2016 WL 5146198, at *2-3. | BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions:<br>This insurance does not apply to:<br>Projects And Operations Covered By a Consolidated (Wrap-up) Insurance Program<br>"Bodily injury" or "property damage" arising out of your ongoing operations or completed operations including those within the "products-completed operations hazard" for which a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.<br><br>This exclusion applies whether or not the consolidated (wrap-up) insurance program:<br><br>(1)   Provides coverage identical to that provided by this Coverage Part;<br>(2)   Has limits adequate to cover all claims; or<br>(3)   Remains in effect.<br><br>[DE 96-1 at 13 (Southern-Owners' Policy)]. |

Here, just as in *TNT*, it is undisputed that the entire CityPlace construction project was covered under the Liberty Mutual "Wrap-Up Insurance Program" which by its express terms operated to

> include as a Named Insured all contractors for whom any named insured has agreed by written contract prior to the loss to provide general liability coverage under a wrap-up insurance program for the "designated project" … [and such] insurance shall only apply to "personal injury" and "property damage" that result directly from operations that are: (1) Within the scope of the "designated project"; and (2) Performed by a contractor directly or indirectly on behalf of the first named insured at a "project site".

[DE 1-2 at 23-24]. It is also undisputed that P&A Roofing enrolled in the Liberty Mutual Wrap-Up Insurance Program. The Liberty Mutual program provides general liability coverage to P&A Roofing arising out of P&A Roofing's operations since such operations were within the scope of the

15

"designated project" (the CityPlace project) and were "performed by a contractor directly or indirectly on behalf of the first named insured" at the project site.

P&A Roofing undoubtedly qualified as an additional insured under the Southern-Owners' policy. However, the policy had an exclusion. And following the same logic as the *TNT* court, this Court finds that the Southern-Owners' OCIP Exclusion extends beyond its named insured (S&S Roofing) to its additional insured (P&A Roofing). Based on P&A Roofing's undisputed enrollment in the Liberty Mutual Wrap-Up insurance program, the OCIP Exclusion in the Southern-Owners' policy acts as a bar to coverage for P&A Roofing in the underlying state court action. This result is in accord with other courts that have interpreted and upheld the application of similar OCIP exclusions. *See, e.g., A.W. Interiors, Inc. v. Travelers Indemnity Co.,* 44 F. Supp. 3d 1071 (D. Colo. 2014), *appeal dismissed*, (10th Cir. 14-1247) (Sept. 23, 2014) (wrap-up exclusion applies to construction defect claims arising out of hotel construction project, where claims alleged property damage that arose out of operations performed by a subcontractor on premises covered by hotel owner's wrap-up insurance policy); *Structure Tone, Inc. v. Nat. Cas. Co.*, 130 A.D.3d 4d 52, 13 N.Y.S.3d 52, 53 (N.Y. App. Div. 2015) (wrap-up exclusion applies in personal injury claim where wrap policy provided coverage).

Liberty Mutual and P&A Roofing argue against application of the OCIP exclusion on grounds that Southern-Owners proposes an unreasonable interpretation that does not account for important material facts—such as the fact that S&S Roofing was not enrolled in the Liberty Mutual wrap-up insurance program and because there are potential claims against P&A Roofing that fall outside the scope of the OCIP Exclusion and within the term of the additional insured endorsement. Liberty Mutual and P&A Roofing argue also that the operative OCIP Exclusion is ambiguous and subject to multiple reasonable constructions. The Court disagrees.

16

While it is true that the language of the exclusions in other cases may be slightly different, they are not materially so. In this Court's view, the cases overall illustrate an important point about controlled insurance program exclusions. That is, courts will not and should not read any requirements into an exclusion that is not contained in its plain language. Here, the plain language of the operative OCIP Exclusion states that the insurance will ***not*** apply to "'property damage' arising out of [S&S Roofing's] ongoing operations or completed operations … for which a consolidated (wrap-up) insurance program has been provided …" The exclusion contains no requirement for S&S Roofing to be enrolled or insured under any such wrap-up insurance program and such requirement will not be read into the exclusion.[3] Further, it is undisputed that the underlying claims against P&A Roofing arise out of S&S Roofing's roof installation operations at the CityPlace project. Such claims therefore fall squarely within the Liberty Mutual "wrap-up" insurance program covering operations at the CityPlace construction project, a program in which P&A Roofing was indisputably enrolled.

## IV.    CONCLUSION

Under the plain language of the Southern-Owners policy, the Court concludes that the operative OCIP Exclusion bars coverage to P&A Roofing and extinguishes Southern-Owners' duty to defend P&A Roofing in the underlying state court action. This conclusion is based upon a reading of the policy as a whole and what this Court finds to be a reasonable interpretation of the insurance policy's plain terms to reach a "practical and sensible interpretation consistent with the intent of the parties—not a strained, forced, or unrealistic construction." *Siegle*, 819 So.2d at 736.

---

[3] P&A Roofing argues that the phrase "in which you are involved" modifies the term "consolidated (wrap-up) insurance program" and thus conditions application of the OCIP Exclusion on S&S's involvement or enrollment in the OCIP [DE 105 at 2-5]. Not so. The phrase "in which you are involved" immediately follows "construction project" and so means a construction project in which S&S Roofing was involved, *i.e.* the CityPlace construction project.

Accordingly, Southern-Owners Insurance Company's Motion for Summary Judgment [DE 95] is **GRANTED** and P&A Roofing and Sheet Metal, Inc.'s Motion for Summary Judgment [DE 105] is **DENIED**. In accordance with Federal Rule of Civil Procedure 58, the Court will separately enter a final judgment.

DONE AND ORDERED in Chambers at West Palm Beach in the Southern District of Florida, this 24th day of January, 2020.

DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE